WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis Schilinski, | CIV 13-8278-PCT-JAT (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, | |
| Respondent. | |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT COURT:

On November 21, 2013, Petitioner Dennis Schilinski, who is confined in the Arizona State Prison Complex-Eyman in Florence, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer (Doc. 14), but despite having the opportunity to do so, Petitioner has not filed a reply.

## BACKGROUND[1]

The presentence report provides the following factual background:

> On August 3, 2008 about 5:15 pm, Deputy Giralde was dispatched to 3825 Neal Avenue, Kingman regarding a weapons offense which occurred next door at 3815 Neal Avenue. On arrival the deputy noticed the body of a female, later identified as Carol Bunn, lying on the ground with blood foaming from her mouth. Dispatch was notified to send assistance.
>
> No one else was found at the residence and medical responders confirmed Bunn was deceased. Detectives interviewed Sandra Reuter, who lived directly

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 14 – Respondent's Answer.

> west of the residence, who reported hearing two gunshots and seeing the male resident, known to her as Dennis, later identified as Dennis Charles Schilinski (37), hurriedly going inside. Ms. Reuter also observed the female lying motionless on the ground in front of the residence.
>
> Another neighbor, Tammi Hendrickson, reporting [sic] hearing arguing, two gunshots and a female voice scream, "Oh God, someone help me please." Hendrickson identified Schilinski via photo line-up as the male residing at the scene.
>
> Bobby Shultz informed officers he gave Schilinski a ride to the area of Walgreens, reporting [Schilinski] had said, when he got into his vehicle, "Man I just shot my old lady." He reported Schilinski said he had shot her twice in the side.
>
> Kingman Police located [] Schilinski in the area of Beverly and Western and [he] was turned over to the Sheriff's Office. Schilinski declined to speak in detail with detectives and requested a lawyer. He did inquire about Bunn and where they had taken her. A gunshot residue test of Schilinski's hands returned positive.

(Exh. D at 1-2.)

Petitioner was booked into jail, and the State filed an indictment in the Mohave County Superior Court charging him with first degree murder, a class 1 felony (Count 1), and misconduct involving weapons, a class 4 felony (Count 2). (Id. at 2; Exh. A at 3-4.) Petitioner later admitted that he shot and killed Carol during a fight over money that occurred during a weekend binge, where the two consumed a copious amount of drugs and alcohol. (Exh. E.)

On September 8, 2009, Petitioner entered into a stipulated guilty plea, where he pled guilty to second degree murder, a class 1 felony (reduced from the charge in Count 1 of the indictment). (Exh. C at 1-2.) Pursuant to the plea agreement, the State agreed to dismiss Count 2. (Exh. B at 2.) Before entering into the agreement, Petitioner acknowledged that he understood the guilty plea would subject him to a prison term ranging from 10 to 18 years, and that he would also be "sentenced to community supervision upon his release from prison for a period of time equal to 15% of his prison sentence." (Id. at 1-3; Exh. C at 1-2.)

Petitioner then formally pled guilty, pursuant to the agreement, which the superior court accepted. (Exh. C at 2.) Petitioner was sentenced to 18 years in prison and, upon his

1  release from prison, was ordered to serve the term of community supervision that was
2  delineated in the plea agreement. (Exh. F at 2.)

3  Sometime later, Petitioner apparently "read [a] DOC policy that said [the superior
4  courts] have the power to waive [orders of] community supervision." (Exh. G at 2-3.) So
5  Petitioner wrote a letter to the superior court on February 10, 2010, requesting that it "waive
6  [his] community supervision" because Petitioner believed the 18-year term of imprisonment
7  was "more than enough punishment." (Id.) The superior court acknowledged receipt of
8  Schilinski's letter and noted that the request was "not made in the form of a petition for
9  post-conviction relief." (Id. at 1.) The superior court then denied Petitioner's request but,
10 nonetheless, remarked that Arizona's sentencing laws had been correctly applied in this case.
11 (Id.)

12 On March 25, 2010 – approximately 163 days after he was sentenced – Petitioner
13 attempted to commence an "of right" post-conviction relief (PCR) proceedings by filing a
14 notice of PCR. (Exh. H.) Petitioner's notice for PCR, however, was untimely. Accordingly,
15 the superior court dismissed Petitioner's untimely PCR petition on April 12, 2010. (Exh. I.)
16 The superior court also rejected Petitioner's claim that he was unaware of the time frame in
17 which to file his notice of PCR because he had been "advised at his Judgment and Sentencing
18 Hearing, both verbally and in writing, that a Notice of PCR must be filed within 90 days."
19 (Id.) Moreover, Petitioner's notice of PCR failed to "specify any justification for his
20 untimely filing, nor does it specify any claims for relief that would survive the expiration of
21 this time frame." (Id.)

22 More than 3 years later, on June 21, 2013, Petitioner filed a special action with the
23 Arizona Court of Appeals. (Exhs. J, N.) The court of appeals declined jurisdiction. (Exhs.
24 K, N.) Petitioner subsequently petitioned the Arizona Supreme Court to review the court of
25 appeals' decision, but the petition was summarily denied. (Exhs. L, O.)

26 On November 21, 2013, Petitioner filed the instant habeas petition in this Court.
27 (Doc. 1.) Petitioner raises one ground for relief. Petitioner asserts that the trial court
28 imposed a two-year term of community supervision as part of his sentence pursuant to a state

1  statute that is "vague, overbroad[] and suscep[]t[i]ble to a broad interpretation other than its
2  expressed intention." Petitioner asserts that his sentence violates his Sixth and Eighth
3  Amendment rights because, under Arizona Revised Statute ("A.R.S.") § 13-710, he is not
4  eligible for parole release, or any early release, prior to completion of his entire sentence and
5  so the imposition of community supervision under A.R.S. § 13-603 potentially extends the
6  length of his prison sentence (if he violates the terms of his community supervision) beyond
7  the sentence "lawfully imposed."

## DISCUSSION

In his Answer, Respondent contends that Petitioner's habeas petition is untimely and, as such, must be denied and dismissed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

An "of-right" petition for post-conviction review under Arizona Rule of Criminal Procedure 32, which is available to criminal defendants who plead guilty, is a form of "direct review" within the meaning of 28 U.S.C. § 2244(d)(1)(A). See Summers v. Schriro, 481 F.3d 710, 711 (9th Cir. 2007). Therefore, the judgment of conviction becomes final upon the conclusion of the Rule 32 of-right proceeding, or upon the expiration of the time for seeking such review. See id.

- 4 -

1       Additionally, "[t]he time during which a properly filed application for State post-
2  conviction or other collateral review with respect to the pertinent judgment or claim is
3  pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); see Lott
4  v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A post-conviction petition is "clearly pending
5  after it is filed with a state court, but before that court grants or denies the petition." Chavis
6  v. Lemarque, 382 F.3d 921, 925 (9th Cir. 2004). A state petition that is not filed, however,
7  within the state's required time limit is not "properly filed" and, therefore, the petitioner is
8  not entitled to statutory tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). "When
9  a postconviction petition is untimely under state law, 'that [is] the end of the matter' for
10 purposes of § 2244(d)(2)." Id. at 414.

11      In Arizona, post-conviction review is pending once a notice of post-conviction relief
12 is filed even though the petition is not filed until later. See Isley v. Arizona Department of
13 Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief
14 is also pending during the intervals between a lower court decision and a review by a higher
15 court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold,
16 536 U.S. 214, 223 (2002)). However, the time between a first and second application for
17 post-conviction relief is not tolled because no application is "pending" during that period.
18 See id. Moreover, filing a new petition for post-conviction relief does not reinitiate a
19 limitations period that ended before the new petition was filed. See Ferguson v. Palmateer,
20 321 F.3d 820, 823 (9th Cir. 2003).

21      The statute of limitations under the AEDPA is subject to equitable tolling in
22 appropriate cases. See Holland v. Florida, 560 U.S. 631, 645-46 (2010). However, for
23 equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights
24 diligently and (2) that some extraordinary circumstances stood in his way'" and prevented
25 him from filing a timely petition. Id. at 2562 (quoting Pace, 544 U.S. at 418).

26      The Court finds that Petitioner's Petition for Writ of Habeas Corpus is untimely.
27 Petitioner was sentenced under the plea agreement on October 13, 2009. (Exhs. C, F.) By
28 pleading guilty, Petitioner waived his right to a direct appeal, and had 90 days to file an

"of-right" petition for post-conviction relief under Rule 32 of the Arizona Rules of Criminal Procedure. Because Petitioner failed to file such a petition within the prescribed time, the judgment became final for statute of limitations purposes when the 90-day period expired, on January 11, 2010, and the limitations period began to run on that date. See 28 U.S.C. § 2244(d)(1)(A); Summers, 481 F.3d at 711. The statute of limitations expired one year later on January 11, 2011.

Petitioner is not entitled to statutory tolling. Petitioner filed his untimely notice of post-conviction relief on March 25, 2010 – which was well after the January 11, 2010 deadline to file an "of-right" petition for post-conviction relief under Rule 32 of the Arizona Rules of Criminal Procedure. Consequently, the untimely notice of PCR failed to constitute a "properly filed" petition to the state court and did not toll the limitations period. See Pace, 544 U.S. at 414-17 (holding that "[b]ecause the state court rejected petitioner's PCR petition as untimely, it was not 'properly filed,' and he was not entitled to statutory tolling under § 2244(d)(2)").[2] Additionally, Petitioner's subsequent state court pleadings (special action initiated June of 2013) did not toll the limitations period. These pleadings were filed after the statute of limitations ended and could not restart the expired 1-year limitations period. See Ferguson, 321 F.3d at 823.

In sum, Petitioner filed the instant habeas petition almost three years after the 1-year limitations period expired. The Petition is therefore untimely.

The Ninth Circuit recognizes that the AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998).

---

[2] Petitioner wrote a letter to the superior court on February 10, 2010, requesting that the court waive the term of community supervision he received. (Exh. G at 2-3.) The letter, however, was merely a "correspondence" to the superior court; it was "not made in the form of a petition for post-conviction relief[.]" (Id. at 1.) Regardless, the correspondence was filed after the January 11, 2010 deadline had passed. (Id. at1-2.)

1  Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control
2  make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063,
3  1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under
4  AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted). "When
5  external forces, rather than a petitioner's lack of diligence, account for the failure to file a
6  timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v.
7  Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must
8  establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some
9  extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also
10 establish a "causal connection" between the extraordinary circumstance and his failure to file
11 a timely petition. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir.
12 2007).

13 Petitioner has not proffered any extraordinary circumstance that would justify
14 equitable tolling or demonstrated that an external impediment hindered the diligent pursuit
15 of his rights. Petitioner's *pro se* status, indigence, limited legal resources, ignorance of the
16 law, or lack of representation during the applicable filing period do not constitute
17 extraordinary circumstances justifying equitable tolling. See, e.g., Rasberry v. Garcia, 448
18 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not,
19 by itself, an extraordinary circumstance warranting equitable tolling.").

20 Accordingly, Petitioner is not entitled to equitable tolling and his habeas petition is
21 untimely.
22 \\\
23 \\\
24 \\\
25 \\\
26 \\\
27 \\\
28 \\\

## CONCLUSION

Having determined that Petitioner's habeas petition is untimely, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 14th day of October, 2014.

_____
Michelle H. Burns
United States Magistrate Judge